UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ERICA CALHOUN,

                                          Plaintiff,                Case # 18-CV-6070-FPG

v.                                                                                  DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                          Defendant.

## INTRODUCTION

Plaintiff Erica Calhoun brings this action pursuant to the Social Security Act seeking review of the denial of her Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") applications. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 13. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On June 23, 2014, Calhoun protectively applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[1] 146-58. She alleged disability since June 4, 2013 due to back injuries, kidney stones, and mental health issues. Tr. 69. On May 26, 2016, Calhoun and a vocational expert ("VE") testified via videoconference before Administrative Law Judge Gregory M. Hamel ("the ALJ"). Tr. 30-68. On October 6, 2016, the ALJ issued a decision finding Calhoun not disabled. Tr. 10-25. On November 24, 2017, the Appeals Council denied Calhoun's request

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 8.

1

for review. Tr. 1-6. On January 23, 2018, Calhoun filed this action that seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Calhoun's claim for benefits under the process described above. At step one, the ALJ found that Calhoun had not engaged in substantial gainful activity through the end of 2015.[2] Tr. 13. At step two, the ALJ found that Calhoun has the following severe impairments:

---

[2] The ALJ's step two heading actually states that Calhoun engaged in substantial gainful activity "through the close of 2014," but it appears that this is a typographical error. Tr. 13. The body of the ALJ's analysis reveals that he found Calhoun to have earnings that exceeded the substantial gainful activity threshold in 2014 and 2015. *Id.*; *see also* Tr. 19 (stating that Calhoun's "earnings records reflected substantial gainful activity throughout 2014 and 2015").

symptoms associated with a history of kidney disease with left nephrectomy; chronic pain disorder; depressive and borderline personality disorders; and polysubstance abuse and dependence. Tr. 14-16. At step three, the ALJ found that these impairments, alone or in combination, do not meet or medically equal any Listings impairment. Tr. 16-18.

Next, the ALJ determined that Calhoun retains the RFC to perform light work[3] but can only perform routine and repetitive tasks and occasionally interact with the public or coworkers. Tr. 18-22. At step four, the ALJ determined that Calhoun can perform her past relevant work as a production assembler. Tr. 23. The ALJ went on to make an alternative finding at step five and determined that Calhoun can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 23-24. Specifically, the VE testified that Calhoun could work as an electronics worker, toy stuffer, and final assembler. Tr. 24. Accordingly, the ALJ concluded that Calhoun was not disabled. Tr. 24-25.

## II. Analysis

Calhoun argues that remand is required because the ALJ failed to adequately develop the record. ECF No. 10-1 at 10-14. Specifically, Calhoun asserts that, especially in light of her *pro se* status and mental health impairments, the ALJ erred by not obtaining certain treatment records related to her kidney removal surgery. *Id.* The Commissioner argues that the ALJ made every reasonable effort to develop the record and that, even if he should have obtained certain records, any error was harmless. ECF No. 13-1 at 11-16.

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

### A. Duty to Develop the Record

The ALJ has an affirmative duty to develop the administrative record due to the "non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *see also Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) ("The duty of the ALJ, unlike that of a judge at trial, is to investigate and develop the facts and develop the arguments both for and against the granting of benefits."). Specifically, the ALJ must "make every reasonable effort" to develop a claimant's "complete medical history" for at least the 12 months before the month in which the claimant applied for benefits "unless there is a reason to believe that development of an earlier period is necessary." 20 C.F.R. §§ 404.1512(d), 416.912(d) (effective Apr. 20, 2015 to Mar. 26, 2017).

"Every reasonable effort" means that the ALJ will make an initial request for evidence from the medical source and, if the evidence is not received, will make one follow-up request between 10 and 20 calendar days after the initial request. *Id.* §§ 404.1512(d)(1), 416.912(d)(1). The ALJ's duty to develop the record is "doubly heightened" when the claimant has a mental impairment and is proceeding *pro se*. *Leutung v. Comm'r of Soc. Sec.*, No. 17-CV-6626-JWF, 2019 WL 1385847, at *3 (W.D.N.Y. Mar. 27, 2019) (citation omitted).

A court must first "be satisfied that the ALJ provided plaintiff with a full hearing under the [SSA]'s regulations and also fully and completely developed the administrative record" before it can consider whether substantial evidence supports the ALJ's decision. *Id.* (quotation marks and citations omitted). Remand is warranted if the ALJ fails to fulfill his duty to develop the record. *Pratts*, 94 F.3d at 39. On the other hand, where there are no "obvious gaps" in the record and a "complete medical history" exists, the ALJ does not have to seek additional evidence. *Rosa*, 168 F.3d at 79 n.5.

### B. Record Development as to Calhoun's Kidney Removal Surgery

Here, the ALJ had a heightened duty to develop the record because Calhoun was *pro se* at the administrative level and the ALJ found her to have severe mental impairments. Tr. 14, 32-36. For the reasons discussed below, the Court finds that the ALJ did not satisfy this duty.

At Calhoun's hearing on May 26, 2016, she informed the ALJ that Dr. Erdal Erturk—a doctor in the urology department at Strong Memorial Hospital (Tr. 379)—removed her kidney on January 7, 2016 and that she last followed up with him in February. Tr. 36-37, 52, 53-54. The ALJ indicated that he would write to Dr. Erturk and get copies of those medical records. Tr. 37. He also specifically informed Calhoun that he would "add to [her] record before [he] ma[de] a decision." Tr. 42.

As promised, on June 6, 2016, the ALJ wrote to Strong and requested "[a]ny and all medical records up to [the] present date." Tr. 405. Despite this broad language, Strong only provided records from February 23 through May 13, 2016, even though Dr. Erturk treated Calhoun before that time and removed her kidney on January 7, 2016. The records Strong submitted to the ALJ document Calhoun's visits with various sources for a myriad of issues, but they do not contain notes from Dr. Erturk or about Calhoun's kidney removal surgery or pre- and post-operative conditions.[4] Tr. 410-688. The ALJ knew that Calhoun had kidney removal surgery and therefore the lack of record evidence about this event created an obvious gap that the ALJ was required to develop.[5]

---

[4] Many of these documents list Calhoun's kidney removal as part of her surgical history, but they do not describe that procedure or Calhoun's condition before or after surgery. *See, e.g.*, Tr. 441-42, 450-51, 469, 539, 572, 607, 617.

[5] There are six pages of evidence in the record from Dr. Erturk that were not submitted in connection with the ALJ's request for documents from Strong. There is a brief note from Dr. Erturk indicating that he saw Calhoun on February 23, 2015 and that she "should not return to work until cleared by her physician." Tr. 384. There is also a treatment note dated March 10, 2015, wherein Dr. Erturk indicated that Calhoun underwent shock wave therapy for a kidney stone. Tr. 379-80. Finally, it appears that Dr. Erturk treated Calhoun for a urinary tract infection on September 22, 2015. Tr. 386-88. These records do not discuss Calhoun's kidney removal surgery.

This error is particularly harmful because the ALJ discounted the opinion of nurse practitioner Jamie Allen, which was favorable to Calhoun, in part because "there were minimal 2015 treatment records to support the limitations" she prescribed. Tr. 22. In other words, the ALJ used a gap in the record to Calhoun's detriment. *See Shaffer v. Berryhill*, No. 16-CV-874-FPG, 2017 WL 6047816, at *3 (W.D.N.Y. Dec. 7, 2017) (noting that the ALJ "used a gap in the record to [the plaintiff]'s detriment" when he acknowledged that the record lacked specific evidence and then discounted an opinion because it was "not adequately supported by prior or contemporaneous psychiatric treatment notes"). Ms. Allen opined that Calhoun had serious limitations in her ability to perform physical work-related functions due to kidney issues.[6] Tr. 373-76. The missing treatment records may have illuminated Ms. Allen's opinion and persuaded the ALJ to afford it greater weight. Even if the additional records did not change the ALJ's analysis of Ms. Allen's opinion, he was still obligated to develop a complete record before deciding Calhoun's case.

The Commissioner asserts that the ALJ complied with his duty to develop the record because the ALJ requested all records from Strong, which provided numerous documents in response, and "[i]t was reasonable for the ALJ to believe that [Strong] had complied with the request." ECF No. 13-1 at 11-12. But if the ALJ had carefully reviewed the documents Strong submitted, especially in light of Calhoun's *pro se* status, he would have realized that they did not contain all of Calhoun's treatment notes and that they lacked information about her kidney removal surgery. The SSA's regulations require the ALJ to make "every reasonable effort" to develop the record, which includes making a follow-up request after the initial request "if the evidence has not

---

[6] Specifically, Ms. Allen assessed Calhoun with perinephric hematoma and nephrolithiasis. Tr. 376. Perinephric hematoma is "a rare condition that is usually caused by benign and malignant renal tumors, vascular abnormalities and inflammatory disorders." *See* National Center for Biotechnology Information, Spontaneous perinephric hemorrhage (1994), *available at* https://www.ncbi.nlm.nih.gov/pubmed/8126842 (last visited Apr. 30, 2019). Nephrolithiasis is commonly referred to as kidney stones, which "are hard deposits made of minerals and salts that form inside your kidneys." *See* Mayo Clinic, Kidney Stones (Feb. 8, 2019), *available at* https://www.mayoclinic.org /diseases-conditions/kidney-stones/symptoms-causes/syc-20355755 (last visited Apr. 30, 2019).

been received." 20 C.F.R. §§ 404.1512(d)(1), 416.912(d)(1) (effective Apr. 20, 2015 to Mar. 26, 2017). There is no indication that the ALJ made a follow-up request here.

The Commissioner also argues that the ALJ's failure to obtain the records related to Calhoun's January 2016 surgery, especially the pre-operative records, is harmless because Calhoun performed substantial gainful activity in 2014 and 2015 and therefore could not have been disabled before 2016. ECF No. 13-1 at 13-15. The Court rejects this argument.

The SSA's regulations specify that the ALJ "will develop [the claimant's] complete medical history for at least the 12 months preceding the month in which [she] file[d] [her] application unless there is a reason to believe that development of an earlier period is necessary." 20 C.F.R. §§ 404.1512(d), 416.912(d) (effective Apr. 20, 2015 to Mar. 26, 2017). Here, Calhoun applied for benefits on June 23, 2014, and therefore the ALJ was obligated to develop her medial history as far back as June 23, 2013. Moreover, "[t]he ALJ may consider all evidence of record, including medical records and opinions dated prior to the alleged onset date, when there is no evidence of deterioration or progression of symptoms." *Green v. Barnhart*, No. 07-CV-0023, 2009 WL 68828, at *9 (W.D.N.Y. Jan. 6, 2009) (citations omitted). Thus, the treatment notes related to Calhoun's kidney removal surgery were not irrelevant based on timing and the ALJ was still required to obtain them.

Accordingly, for the reasons stated and in light of the ALJ's broad duty to develop the record, the Court finds that remand is required. Where, as here, "there are gaps in the administrative record, remand to the Commissioner for further development of the evidence is in order." *Glast v. Astrue*, No. 11-CV-5814 SLT, 2013 WL 5532696, at *10 (E.D.N.Y. Sept. 30, 2013) (citation omitted).

**CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: May 2, 2019
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court